IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | 2:09-cv-257 |
| v. | ) | |
| | ) | |
| INTERNATIONAL SHELL, INC, and | ) | |
| BRUCE MARTIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) AND 12(b)(5), Docket entry number 7, with brief in support (Doc. # 12), filed by Defendants Bruce Martin and International Shell, Inc. ("International Shell").  Plaintiff filed a brief in opposition (Doc. # 11), along with a REPLY BRIEF IN OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER CASE TO THE WESTERN DISTRICT OF TENNESSEE (Doc. # 13).  The motion is ripe for disposition.

### Statement of the Case

Plaintiff initiated the current diversity action on February 27, 2009, by filing a Complaint which alleged two counts of violations of the Pennsylvania Uniform Transfer Act, 12 Pa..C.S.A. § 5104(a)(1) and 5105, and corresponding violations of the Tennessee Code - Fraudulent Conveyances and Devices, Tenn.Code Ann. § 66-3-305(a)(1) and 306.  *See generally* Doc. # 1. Plaintiff's claims stem from unpaid charges for professional legal services rendered to two companies that apparently are no longer in existence, the Tennessee Shell Company, Inc. ("Tennessee Shell"), and MTU, Inc. ("MTU").  *Id.* at ¶¶ 9 - 14.  Defendant International Shell is the transferee of assets from Tennessee Shell and MTU.  According to the Complaint, in or

around March 2007, "virtually all of the assets of TSC and MTU were sold to International Shell, which consists of and is governed by the same and/or substantially similar shareholders, directors, and officers as" Tennessee Shell and MTU. Doc. # 1 at ¶ 17. Defendant Martin was an officer of Tennessee Shell and MTU and is the current president of International Shell. *Id.* at ¶ 6. Plaintiff alleges that at the start of his professional relationship with Tennessee Shell and MTU, he was originally solicited for his services. Further, Plaintiff alleges that throughout the course of his professional relationship with Tennessee Shell and MTU, he submitted invoices to the companies for his professional services and costs on a monthly basis until the end of 2006. Plaintiff claims that the invoices for services and costs have never been paid for the period of time beginning in October of 1997 and ending at the end of 2006. *Id.* at ¶¶ 10 - 12.

Both Defendants move to dismiss for lack of in personam jurisdiction on the basis that neither International Shell or Martin"have any connection, let alone minimal contacts with Pennsylvania". Doc. # 12.

## Legal Analysis

Under Fed.R.Civ.P. 4(e), a federal district court may assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *see also*, *Stevens v. Meaut*, 264 F.Supp.2d 226, 229 (E.D.Pa 2003). In order to exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution. *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). The Court's first step is satisfied here. Pennsylvania's long-


arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa.Cons.Stat. § 5322(b). The statute also permits jurisdiction over a non-resident if the non-resident has "[c]aused harm or tortious injury by an act or omission in this Commonwealth" or "[c]aus[ed] any harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." § 5322(a)(3), (4).

The Court next considers "the relationship among the defendant, the forum, and the litigation" in order to determine if personal jurisdiction exists under the precepts of the Due Process Clause. *IMO Industries*, 155 F.3d at 259 (*quoting Shaffer v. Heitner*, 433 U.S. 186, 204 97 S.Ct. 2569 (1977)). Due process requires that the defendant have "minimum contacts" in the forum state, and that the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945) (quotations omitted). The Supreme Court has stated that "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026 (1987) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)).

Personal jurisdiction may be exercised under two distinct theories, a defendant's general contacts or a defendant's claim-specific contacts with the forum. *See Remick*, 238 F.3d at 255. General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. *Id.*; *see also, Vetrotex Certainteed Corp. v. Consol. Fiberglass Prod. Co.*, 75

F.3d 147, 151 n. 3 (3d Cir. 1996). Specific jurisdiction, i.e. jurisdiction based upon a defendant's claim-specific contacts with the forum, is present only if the plaintiff's cause of action arises out of a defendant's contacts with the forum. *See Helicopterous Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868 (1984). In such cases, a court's personal jurisdiction over a defendant as to a particular claim does not necessarily mean that the court has personal jurisdiction over that same defendant as to other claims. *Remick*, 238 F.3d at 255; *see also*, *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539 (3d Cir.1985) (finding personal jurisdiction over defendant in wrongful death action with regard to fraudulent misrepresentation and emotional distress claims but not as to plaintiffs' negligence and breach of contract claims); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir.1992) (examining the issue of personal jurisdiction as to plaintiff's fraud claim separately from plaintiff's breach of fiduciary duty claim); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987) (describing specific jurisdiction as present when "the particular cause of action sued upon arose from the defendant's activities within the forum state"). Further, a defendant's forum-related activities must be of the kind such that the defendant should "reasonably anticipate being hailed into court" in that forum. *Remick*, 238 F.3d at 255 (*citations omitted*). Physical presence within the forum is not required to establish personal jurisdiction over a non-resident defendant. *See Burger King Corp.,* 471 U.S. at 476. A plaintiff is required to show that the defendant has purposefully directed his activities toward the residents of the forum state and that the injury arises from or is related to those activities, *see id.* at 472; *see also*, *General Elec. Co. V. Deutz Ag*, 270 F.23d 144, 150 (3d Cir. 2001), or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

4

laws." *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the allegations of the complaint are taken as true. However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *IMO Industries*, 155 F.3d at 257; *see also Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583 (1996). The plaintiff must establish those contacts with reasonable particularity; he may not rely on general averments in the bare pleadings. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992); *Time Share Vacation Club v. Atlantic Resorts*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984).

Plaintiff does not allege general personal jurisdiction nor does the underlying Complaint allege that Defendants have systematic and continuous contacts with Pennsylvania. The claims against Defendants relate only to unpaid fees and costs accrued by Plaintiff on behalf of two corporations which are not parties to this action. Within the Complaint, Plaintiff has not alleged, nor is there any reference to suggest, systematic and continuous contacts with the forum on the part of these Defendants. Therefore, the Court has no basis to exercise general personal jurisdiction over Defendants.

Plaintiff does aver claim-specific contacts with the forum in opposing the motion to dismiss. In particular, Plaintiff asserts that the legal services rendered on behalf of Tennessee Shell and MTU were performed in Allegheny County within this district. Doc. # 11. Plaintiff also references a default judgment he received on January 6, 2009, against Tennessee Shell and MTU in a previous collection action for the same legal services. That previous action, *Clark v.*

*Tennessee Shell, Inc. and MTU, Inc.*, Civ.A. No. 2:07-cv-1579, was initiated by complaint on November 19, 2007, approximately seven months after the assets of Tennessee Shell and MTU were transferred to International Shell.  The Court will consider these averments for the purpose of determining whether it should exercise specific jurisdiction.

    As a threshold matter, Plaintiff has not alleged any contacts by either Defendant sufficient to demonstrate minimum contacts with the forum.  Plaintiff makes no allegation that Defendant International Shell ever had any contact with him, much less conducted any activity in Pennsylvania.  Likewise, while Plaintiff alleges that Defendant Martin was previously an officer of Tennessee Shell and MTU and is currently the President of International Shell, there is no allegation of any contact which Martin had with Plaintiff or with Pennsylvania in either his current or former capacity of an officer of the respective corporations.  The analysis does not stop there, however.  In an intentional tort case, a plaintiff can also satisfy the showing of a defendant's minimum contacts by alleging facts sufficient to meet the "effects test" established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), for determining personal jurisdiction over non-resident defendants who allegedly commit torts outside the forum.  *Calder* involved an allegedly libelous National Enquirer article written and edited in Florida and published nationwide concerning the activities of a California resident in California.  465 U.S. at 784.  The Court found that personal jurisdiction was proper in California because the plaintiff was an entertainer whose television career was centered in California, the article was drawn from California sources, the "effects" of the defendants' Florida conduct were chiefly felt in California, "their intentional, and allegedly tortious actions, were expressly aimed at California" and they "knew that the brunt of [their actions] would be felt by respondent in the State in which she lives

and works and in which the National Enquirer has its largest circulation." *Id.* at 788-90.

The Third Circuit narrowly interpreted *Calder* and first articulated its three-part effects test in *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir.1998):

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm caused by the plaintiff as a result of that tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

The Court finds that Plaintiff has not established the requisite level of minimum contacts under the effects test of *IMO Industries*. Accepting that which Plaintiff has alleged as true, the Complaint raises intentional tort claims and further alleges that Plaintiff felt the brunt of the harm in Pennsylvania, by virtue of the fact that Plaintiff's office is located in Pennsylvania and that he performed his services on behalf of Tennessee Shell and MTU while being located within this district. However, the mere allegation that Plaintiff felt the effect of the Defendant's alleged tortious conduct in the forum because he was located here is not enough to satisfy *Calder*. *See IMO Industries*, 155 F.3d at 263. Plaintiff has failed to point to any actions, other than the indirect action of being the transferee of the assets of Tennessee Shell and MTU, that either Defendant targeted (or "expressly aimed" their conduct at) the forum. As such, Plaintiff has not shown that the forum was the focal point of the tortious activity.

The Court notes that the default judgment Plaintiff obtained against the two former corporations does not change this decision. In his brief in opposition to the motion to dismiss, Plaintiff argues that neither Tennessee Shell nor MTU previously challenged personal jurisdiction in *Clark v. Tennessee Shell, Inc. and MTU, Inc.*, Civ.A.No. 2:07-cv-1759, for the

proposition that the Court may exercise personal jurisdiction in the matter *sub judice*. *See* Doc. # 11. In response to that claim and in further support of their motion to dismiss, Defendants indirectly attack the basis of the default judgment by suggesting that service of the complaint was never effected in that action. *See* Doc. # 12. The Court will take no position with respect to that previous action at this stage other than to note that questions of jurisdiction are to be determined based upon the facts and circumstances of the parties and the claims before it. Given these facts, Plaintiff has failed to establish the basis for the Court to exercise personal jurisdiction over these Defendants. To hold otherwise would require exercising personal jurisdiction over two Defendants with no apparent contacts with the forum based upon a challenged premise that Plaintiff's previous action exercised personal jurisdiction over two other companies that apparently transferred all of their assets away more than seven months prior to the start of that previous action. The Court is unwilling to do so.

     As an alternative to dismissal, Plaintiff moves for the case to be transferred to the United States District Court in the Western District of Tennessee. Doc. # 13. Defendants have filed no response to this motion. A federal court's lack of jurisdiction does not preclude the court from transferring a case if the receiving court would have subject matter jurisdiction. *Godwin v. Sec'y of HUD*, 356 F.3d 310 (D.C.Cir. 2004). Whenever a civil action or an appeal is filed in a court and that court finds that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other court in which the action or appeal could have been brought at the time it was filed. 28 U.S.C.S. § 1631; *see Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir.1988). Although it refers to transfer of "civil action," not "claims," 28 U.S.C. § 1631 permits the transfer of a portion of the claims in an action. *United States v. County of Cook*, 170

F.3d 1084 (Fed.Cir. 1999) (finding that 28 U.S.C. § 1292(d)(4)(A) clearly recognizes that transfer of action under 28 U.S.C. § 1631 may be granted in whole or in part); *see also Carter v. United States*, 62 Fed. Cl. 365, 370 (Fed.Cl.2004) (holding that 28 U.S.C. § 1631 permits transfer of less than all of claims in action).  Upon transfer, the action or appeal shall proceed as if it had been filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it is transferred.  28 U.S.C.S. § 1631.  Under the circumstances of this case, and without objection from the Defendants, the Court finds that transfer of this civil action is appropriate because the Court has no jurisdiction over either Defendant, and the case could have been brought in the Western District of Tennessee.

## Conclusion

For the foregoing reasons, this Court finds that it lacks in personam jurisdiction over both Defendants and the Clerk is, therefore, directed to transfer the case to the United States District Court for the Western District of Tennessee forthwith.

So ordered, this 24th day of November, 2009.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge


cc:   John R. O'Keefe , Jr., Esquire
      Email: jokeefe@metzlewis.com

      Thomas E. Reilly, Esquire
      Email: lcrown@tomreillylaw.com

9